UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | No. 19-cr-321 (KBJ) |
| JAMARI ANDRE BRIGHTHAUPT, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion for pretrial detention of Defendant Jamari Brighthaupt (the "Defendant"). The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

### Introduction

The Defendant has been charged by indictment alleging one count of Interference with Interstate Commerce by Robbery, pursuant to 18 U.S.C. § 1951, and one count of Using, Carrying, Brandishing, and Possessing a Firearm During and in Furtherance of a Crime of Violence, pursuant to 18 U.S.C. § 924(c). Based on the Defendant's conduct and characteristics, the government respectfully requests that the Court hold him without bond pending trial to ensure the safety of the community.

### Procedural History and Applicable Authority

At his initial appearance on September 24, 2019, the government orally moved for detention pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(A). The Court scheduled a detention hearing for September 27, 2019. Pursuant to 18 U.S.C. § 3142(e)(3)(B), there exists a

rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendant's appearance in this case and otherwise protect the community.

The government contends that the Defendant is a great danger to the community. The government must establish this by clear and convincing evidence. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). Section 3142(g) provides four factors the Court should consider in determining whether to detain the Defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release. *See* 18 U.S.C. § 3142(g). Application of these factors, along with the applicable rebuttable presumption, demonstrate that no condition, or combinations of conditions, short of detention will ensure the safety of the community. Thus, the Defendant should be held.

## Nature and Circumstances of the Offenses Charged

*April 26, 2019 Incident*[1]

On April 26, 2019, at approximately 12:25 p.m., one suspect entered the DuPont Circle Pharmacy located at 1506 21st Street, N.W., Washington, D.C. The suspect was described as a black male, approximately 5'6" to 5'7" tall, wearing a black Under Armor hooded sweatshirt, black pants with "Armani Exchange" in white lettering on the left pant leg, black and white tennis shoes, and a surgical mask with an image of Mickey Mouse on the front. Two employees were in the pharmacy at the time the suspect entered. Employee 1 was in the rear of the pharmacy and Employee 2 was near the front by the counter. The suspect jumped over the pharmacy counter,

---

[1] Although the Defendant has not yet been charged with this incident, the government has included it here because it informs both the nature and circumstances of the currently charged offenses, as well as the identification of the Defendant.

produced a black handgun, and ordered Employee 1 to open the safe where the controlled substances were stored, and Employee 1 complied. The suspect demanded Employee 2 to retrieve a plastic bag and Employee 2 also complied. The suspect made Employee 2 fill the bag with various medications. Once the bag was filled, the suspect ordered both employees to lie on the floor and count to 15, giving the suspect time to leave the pharmacy. The following items were taken during the robbery: 30 tablets of Hydrocodone-Acetaminophen, 1,822 tablets of Oxycodone, 861 tablets of Oxycodone-Acetaminophen, 500 mL of Oxycodone solution, and 232 mL of Promethazine syrup. After the robbery, the suspect changed clothes behind a nearby hotel and was seen on surveillance video wearing blue shorts and a dark colored shirt.

   On April 25, 2019, a day prior to that robbery, the same masked suspect was seen by several witnesses outside of the pharmacy pacing back and forth. He eventually entered the pharmacy, spoke with an employee about non-prescription medication, and left the pharmacy at approximately 10:00 a.m. without doing anything. Witnesses believed the suspect was casing the pharmacy to commit the robbery the next day. Both incidents were captured on video surveillance

either in the store or on the street.

 

*Screenhot from the April 26, 2019 Incident*     *Screenshot from the April 25, 2019 Incident*

*July 13, 2019*

On July 13, 2019, at approximately 12:42 p.m., a suspect entered the DuPont Circle Pharmacy without wearing anything obstructing his face and asked for stomach medication. One of the employees working at the pharmacy on July 13, 2019 had also been working at the pharmacy on April 26, 2019 when it was robbed by the lone suspect. That witness immediately recognized the suspect as the same person who robbed him on April 26, 2019. The suspect eventually left the pharmacy without making a purchase and entered a blue sedan bearing Maryland tags.



*Screenshot from the July 13, 2019 Sighting*

MPD Detective Brian McCarthy reviewed the video from July 13, 2019. Based on identifications made by other officers familiar with the suspect, Detective McCarthy was also able to identify the suspect as the Defendant. He further identified the Defendant as having an Instagram account with the user name "approved.geo". The Defendant's public Instagram account has photos of him wearing the same pants and shoes as the suspect in the April 26, 2019 robbery and the same shoes as the suspect in the July 13, 2019 sighting. Furthermore, the Instagram account has photos of him sporting a distinct tattoo on his left forearm, which matches the arm tattoo of the suspect in the July 13, 2019 sighting.



*Screenshot from the Defendant's Instagram Account*

 

*Screenshot from April 26, 2019 Robbery   Screenshot from the Defendant's Instagram Account*



*Screenshots from the July 13, 2019 Sighting*



*Screenshots from the Defendant's Instagram Account*

*The Instagram Account*

On August 9, 2019, law enforcement executed a search warrant on the Defendant's Instagram account—19-sc-1693 (GMH)—and discovered numerous incriminating pictures and posts. For example, several photos showed one pint (473 mL) bottles of Promethazine with Codeine with the words "BULK CONTAINER—NOT FOR HOUSEHOLD USE" printed on the

label. These bottles are retained by pharmacies and not sold to customers, meaning the general public should not have the bottles in their possession.

 

*Screenshots from the Defendant's Instagram Account*

On April 26, 2019, the day of the aforementioned robbery, the Defendant posted photos of him possessing large sums of money, and in the days following the robbery, there were multiple posts regarding the sale of drugs posted on the Instagram account, as well as direct messages to various people regarding the sale of "15s," "30s," and "20s." The posts made reference to "ercs," "perc," and "percs," (believed to be Percocet) and "oz" and "ounces" (believed to be marijuana).



*Screenshots from the Defendant's Instagram Account*

 

*Screenshots from the Defendant's Instagram Account*

Additionally, photos posted on the Defendant's Instagram account on May 2, 2019 show the Defendant in a kitchen with a large sum of money, an associate with a black handgun, and white bottles of prescription medication.



*Screenshots from the Defendant's Instagram Account*

Finally, throughout the Defendant's Instagram account, law enforcement found multiple photographs of the Defendant and his associates brandishing and carring firearms, including videos

showing the Defendant himself with various different kinds of firearms, such as a long gun and a pistol.

### *September 17, 2019 Incident (and Charged Offense)*

On September 17, 2019, at approximately 6:44 p.m., the Defendant entered the DuPont Circle Pharmacy. The Defendant wore red and white pants, green shoes, a black shirt, and a black hat. There was nothing obstructing his face. The only employee working at the pharmacy on September 17, 2019 was also present at the pharmacy on April 25, 2019—the day of the Defendant's first sighting—and on July 13, 2019—the day of the other sighting (where the Defendant was unmasked). While the employee was not present for the robbery on April 26, 2019, he had previously reviewed the surveillance footage from that day. The employee was familiar with the Defendant and recognized him as soon as he entered the pharmacy. The employee told the Defendant the police were looking for him and then the employee tried to flee the pharmacy. The Defendant followed him into the lobby area, pushed the employee against the wall, and showed him a gun that he had with him. The Defendant told the employee he would kill him and forced him to unlock the door and let him back into the pharmacy. The employee complied and as they walked back into the pharmacy, the Defendant pulled out a black handgun. The employee led the Defendant to the controlled substances safe, opened it, and provided the Defendant with the multiple bottles of Oxycodone that he demanded. The Defendant put the bottles in a bag he brought with him. The Defendant made the employee lie down on the floor and count to 20 until the Defendant left the pharmacy. A preliminary inventory taken after the robbery showed the suspect stole multiple bottles of different types of Oxycodone, worth over $6,000. Law enforcement identified the Defendant by reviewing the video surveillance system.

The Defendant's Instagram account has multiple pictures of him dressed in the same red pants as he wore in the robbery.

 

*Screenshot from the September 17, 2019 Incident*    *Screenshot from the Defendant's Instagram*

Within hours of the robbery, a video was posted on Defendant's public Instagram account showing many white pills packaged in clear plastic bags. On September 18, 2019, a photo was posted of white pills packaged in clear plastic bags with the words, "Don't think I will ever see a drought again," and later a photo of a large sum of money. These pills are consistent with the pills stolen during the September 17, 2019 robbery.



*The Defendant's Apprehension*

On September 20, 2019, a grand jury for the U.S. District Court of the District of Columbia indicted the Defendant on one count of Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951, and one count of Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. 924(c). On that same date, the Court issued an arrest warrant for the Defendant.

On September 23, 2019, members of the FBI executed two District Court search warrants—19-sw-343 (GMH) and 19-sw-344 (GMH)—on two separate locations: 2400 16th Street N.W. Apartment 641, Washington, D.C., an apartment the Defendant resides at, and 1010 14th Street S.E., Washington, D.C., a house Defendant frequents and where he is often observed in his Instagram posts.

During the search of 2400 16th Street N.W., Apartment 641, law enforcement found: 407 white round pills with a "512" stamp, consistent with Oxycodone; 340 white oval pills with a "U15" stamp, consistent with Oxycodone; 50 round pills with a "10 325" stamp, consistent with

Oxycodone; over 300 other unidentified pills; Glock 30S .45 caliber pistol; Glock magazine containing 13 .45 caliber bullets; black extended magazine containing 11 .45 caliber bullets; owner's manual for a Glock pistol; $3,923 in cash; and clothing consistent with what was worn during at least one of the robberies. When law enforcement entered the apartment in order to search it and apprehend the Defendant, the Defendant jumped out of the apartment's sixth story window and landed on the ground below, injuring himself. The loaded Glock pistol with magazine containing 13 bullets, as well as the 407 white pills, were located outside of the apartment on the ground, in close proximity to where the Defendant landed.

At 1010 14th Street S.E., law enforcement seized: multiple bags containing green leafy substance, consistent with marijuana; a bottle of plain Promethazine; three bottles containing unidentified pills; and six vials containing light brown liquid, suspected to be phencyclidine ("PCP"); and a black handgun and magazine. Several other persons—associates of the defendant—were located in the residence, too.

To summarize, the Defendant committed a brazen armed robbery on video, brandishing a firearm, threatening to kill a pharmacy employee, and stole thousands of dollars of pharmaceuticals in order to sell the narcotics via the internet and on the streets. When caught by law enforcement, the Defendant leapt out of a window several stories in the air to avoid capture. At the Defendant's residence, law enforcement discovered proceeds of the robbery, clothing from the robbery, cash, and a firearm. At the other location, where the Defendant frequents, police found the Defendant's associates, along with illegal narcotics and a firearm. On this factor *alone*, the circumstances of this entire sequence of events weighs heavily in favor of detention.

## **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, weighs heavily in favor of

detention, too. The evidence against the defendant is overwhelming. The video surveillance of the September 17, 2019 armed robbery, in conjunction with the Defendant's prior behavior on April 25, April 26, and July 13, 2019, clearly establish that the Defendant is the armed assailant. Moreover, the Defendant's own Instagram account paints a damning picture of his involvement with narcotics trafficking and provides multiple photographs corroborating details, like adorned clothing, relevant to the robberies. Hours after the September 17, 2019 robbery, the Defendant himself posted a photograph showing hundreds of pills consistent with those taken during the robbery. Finally, when police attempted to apprehend the Defendant, entering his residence, he tried to escape by *jumping out of a sixth floor window*.

In the residence from which he fled and its surrounding area, law enforcement seized approximately 1000 pills, all of which were consistent with pills stolen from the pharmacy; a Glock pistol and magazine; a black extended magazine; $3,923 in cash; and clothing consistent with what was worn during at least one of the robberies. The evidence also clearly establishes that the Defendant intended to sell the pills for profit, furthering endangering the public.

### **The Defendant's History and Characteristics**

Although the Defendant has no adult convictions, he is only 18 years old and has been implicated in multiple violent and dangerous offenses in a relatively short time frame. Moreover, as noted on the bail sheet as provided by the Pretrial Services Agency (page 3), the Defendant has a history that is immensely concerning. The government will refer to these matters further during oral argument and proffer additional details for the Court. Nevertheless, it is safe to say that the Defendant has had issues following orders in the past. As also noted by pretrial, the Defendant is unemployed and not in school.

Normally, it would be fair to suggest that a young defendant without a criminal record is

someone who represents less of a threat to society than a person with a history. That cannot be said in this particular case.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the Defendant's release, also weighs strongly in favor of detention. Here, the evidence establishes that the Defendant used a firearm to effect a commercial robbery to steal pills in order to sell those pills on the street. When confronted by law enforcement, he fled by jumping out of a sixth story window. The fact that the Defendant is also implicated, by way of the government's proffer, in an additional robbery on April 26, 2019, as well as various other incidents involving the sale of narcotics only serves to amplify the danger that this Defendant presents to the community at large.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the Defendant will comply with court order and abide by appropriate release conditions. Furthermore, the Defendant simply cannot rebut the presumption applicable in this case. In fact, three of the discussed factors weigh strongly in favor of detention. The fact that the Defendant has no adult record does not sufficiently rebut the presumption, particularly in light of his past as noted on the bail sheet. Plainly put, this was such a flagrant violation of law that the Court simply cannot trust the Defendant and he therefore should be held without bond.

### Flight Risk

At arraignment, the government requested detention pursuant to 18 U.S.C. § 3142(f)(2)(A). Under that subsection, the government must establish that the defendant poses a risk of flight by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Here, the government requests detention on the basis that the Defendant tried to flee from law

enforcement when they attempted to apprehend him. The Defendant may attempt to argue that this momentary lapse of judgment—i.e., jumping out of the window—was prompted by the entrance of police into his apartment. But it is important to recognize that when law enforcement tried to enter the apartment, the Defendant literally took flight. He was so intent on removing himself from that situation that he risked not only substantial injury, but actual death. The belief that any court could safely and adequately contain the Defendant from further flight appears dubious given his death-defying leap. This concern is further aggravated by the fact that if convicted, the Defendant faces a mandatory-minimum of seven years' imprisonment on one charge alone. Given the strength of the evidence in this case, and the aggravating factors detailed above, the Defendant has every reason to flee and little reason to comply.

## Conclusion

The Court should grant the government's motion to detain the defendant pending trial.

Respectfully Submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472-845

By: _____/s/_____
GREGORY P. ROSEN
VA Bar No. 82584
Assistant United States Attorney
555 Fourth St. N.W.
Washington, D.C. 20530
(202) 252-6932
Gregory.rosen@usdoj.gov

## Certificate of Service

I, Gregory Rosen, hereby certify that the foregoing filing was sent to counsel of record, via email, on September 26, 2019.

_____/s/_____
GREGORY P. ROSEN